# SUPREME COURT.

## PATTERSON agt. COPELAND et al.

*Specific performance — Parol agreement — Action against executors — Abatement — Parties — Evidence.*

A parol promise by the owner of land to give it to another, accompanied by actual possession thereof by him, will be enforced in equity by a decree for specific performance, where the promisee, induced by such promise, has made substantial improvements, and expended considerable money upon the premises, with the knowledge of the promisor.

Where A, with a view to aid his brother B, purchased a farm, and B entered, occupied and improved it, greatly enhanced its value by his own labor, and with his own means, and paid all taxes, and the interest on the purchase-money to A, year after year, under and pursuant to a parol agreement and understanding between them, that the premises should be his, on refunding to A the purchase-money.

*Held*, that contracts like this will be respected and enforced by the court, by a decree of specific performance.

The question as to whether an action is against the defendants personally, or against them in their representative capacity as executors, is to be determined by the averments in the complaint, and where the facts stated and the prayer for relief fully characterize the action as one against them in their representative capacity, it is sufficient, although in the title to the cause they are not named as executors.

An action to compel a specific performance of a contract entered into by the deceased, brought against his executors, does not *abate*, nor is it put in abeyance by the death of one of the three executors. The right of action and the ground of relief continues against the surviving executors; the decree could be against them the same as if their co-executors had lived. A suggestion of the death of the co-executor in the record is all that is necessary.

An objection that there is a defect of parties, must be taken either by demurrer or answer, or it will be deemed to have been waived.

In an action against executors for a specific performance of a contract, entered into by the testator, persons claiming through such testator are

Patterson agt. Copeland.

not necessary parties.   The decree against the executors to make the con-
veyance would bind all parties claiming through the latter.

The provision of section 399 of the Code, prohibiting a party, in certain
cases, from testifying to a personal transaction or communication between
him and a deceased person, does not preclude a party from testifying
to statements made by a deceased person to a third party in the witness'
presence, and this, too, even although the witness should participate in
the conversation.

In equity actions the court will look to the entire case, and see whether
substantial justice has been done, and when that appears it will affirm
the judgment, notwithstanding the admission of testimony which, in
ordinary actions at law, might have necessitated a new trial.

*Third Department, General Term, May,* 1876.

LEARNED, *P. J.,* BOARDMAN *and* BOCKES, *JJ.*

THIS is an appeal by the defendants, from a judgment
entered against them, on the direction of a referee.

The action was brought to compel the specific performance
of a contract alleged to have been made between the plaintiff
and defendants' intestate, for the conveyance by the latter to
the former of the premises described in the complaint.   The
case was referred to a referee, who gave judgment against the
defendants, by which they were required to convey the
premises to the plaintiff, as demanded in the complaint.

The referee found on the proofs submitted to him, that, in
1840, the plaintiff and Joseph Patterson, the defendants' intes-
tate, entered into an oral agreement by which the said Joseph
was to purchase the premises at the price of $1,000 and take
title to himself; that the plaintiff was to enter into and have
possession of the same, and manage, cultivate and improve
them, and have the avails ; to pay all taxes and also pay to
Joseph the interest annually on the $1,000 purchase-money,
until such time as he should choose to pay the principal, and
that on payment to Joseph of such principal, the latter should
convey the premises to him.   The referee further found, that
Joseph made the purchase and took the title to himself, pur-

suant to such agreement, and that thereupon, and under and pursuant to the same, the plaintiff entered into possession of the farm and paid the taxes, and also the interest on the purchase-money to Joseph yearly, and every year until 1869, when, on his offering the interest, Joseph stated that he would take no more, but would give the plaintiff a deed. The referee further found the plaintiff, relying upon such agreement, had greatly improved the premises, by erecting valuable buildings thereon, and by clearing up and fencing the same, so that the value thereof was increased from $1,000 from the time he entered into possession to $4,000 or $5,000 at the commencement of the action.

The referee also further found that Joseph died in 1870, having made a last will and testament, in which he appointed the defendants and one Joseph Cronin executors thereof, whereby he empowered his executors to sell and convey all the lands he owned, except what was specifically devised, and turn the same into money, and that the premises in question were not so devised.

That such will was afterwards, and in 1871, proved and admitted to probate, and letters testamentary were duly issued to said executors, but that said Cronin died after the commencement of this action.

The referee further found that said testator still held the title of the premises at the time of his decease, having declined to convey the same to the plaintiff, notwithstanding the latter had offered to pay him the purchase-money, placing his omission to convey, on the ground that all he wanted was the interest while he lived, and that on his death the premises would belong to the plaintiff.

As matter of law, the referee held and decided that the plaintiff was entitled to a specific performance of the contract, and directed judgment that the executors convey the premises to the plaintiff on payment to them of the aforesaid purchase-price, with the interest thereon remaining unpaid, and charged the estate with the plaintiff's costs.

Judgment being entered pursuant to such action, the defendants appealed.

*A. D. Wait*, for plaintiff.

*H. S. Dodd & L. H. Northup*, for defendants.

BOOKES, *J.*—The facts found by the referee in this case are well established by the proof. That the testator, with a view to aid his brother, thé plaintiff, made the purchase of the farm, and that·the latter entered, occupied ˙and improved it, greatly enhanced its value by his own labor and with his own means, and paid all taxes and the interest on the purchase-money to the testator, year after year, under and pursuant to an understanding and agreement between them that the premises should be his on refunding to the testator the purchase-money, admits of no doubt.

The evidence is clear, direct, and·full to those facts. It seems quite probable that the testator did not intend to exact the principal sum, but proposed ultimately to discharge the debt to his brother, but never having done this in a legal and effective way, the referee was right in requiring its payment as a condition of the conveyance. The case of *Freeman* agt. *Freeman* (43 *N. Y.*, 34), resembles the one in hand in many respects, and shows that contracts like that found by the referee in this case will be respected and enforced by the court.

The testator was often on the premises ; saw the improvements going on ; advised them and spoke of them as beneficial to the plaintiff ; accepted annual payments as interest (not as rent) ; said he purchased the farm for his brother ; spoke of a bargain with him ; said his word was as good as his bond ; that all that he wanted was the interest on his money as long as he lived ; that, on his decease, the farm would be his brother's, and that he would give him a deed of it. His omission to give the deed seems to have been occasioned by his

negligence, and was continued until a just purpose was frustrated by death, as is often the case when duty is postponed. Any other construction than that given the evidence by the referee would have been manifestly unjust and inequitable. The acts of the parties through a series of years; the fair and just import of many conversations between them, with their promises and clearly-expressed purposes, combine to give support to the conclusions arrived at by the referee, which in their legal application work out a just result.

But it is insisted that technical difficulties are presented in the case which require a reversal of the judgment. It is urged that the action is against the defendants, personally, and not against them in their representative capacity as executors.

This question is to be determined from the averments in the complaint (*Hallet* agt. *Harrower*, 33 *Barb.*, 537; *Fowler* agt. *Westervelt*, 40 *id.*, 374). Those averments made a case against the defendants, as executors.

The facts stated and the prayer for relief fully characterize the action as one against the defendants in their representative capacity, and the defendants appeared and answered as executors.

This alleged ground of error is without support. Nor did this action abate, nor was it put in abeyance by the death of one of the three executors.

The right of action and ground of relief here continued against the surviving executors (*Lachaise* agt. *Libby*, 21 *How.*, 363; *Shook* agt. *Shook*, 19 *Barb.*, 653; *Leggett* agt. *Dubois*, 2 *Paige*, 211; 2 *R. S.* [*Edmd. ed.*], 79, *sec.* 44). The litigation remained against the surviving parties, and the decree could be against them the same as if their co-executors had lived.

A suggestion of the death of the co-executor in the record was all that was necessary. Nor is the objection that there is a defect of the parties well taken. As regards the defendants on the record they must be deemed to have

waived this objection if it had foundation in fact, because not taken either by demurrer or answer (*Code, sec.* 148 ; *Potter* agt. *Ellice,* 48 *N. Y.,* 321 ; *Lee* agt. *Wilkes,* 27 *How.,* 336). Having taken issue on the facts alleged in the complaint, it became the duty of the referee to try and determine the questions presented on the pleadings. But there was, in fact, no defect of parties. According to the admissions in the answer, it lay with the executors to perform the contract alleged in the complaint and found by the referee ; it devolved on them to carry the agreement of the testator into effect. The rights of the testator prior to his decease, and of his executors under his will, were such only as pertained to a vendor under a contract for the sale of lands. The decree against the executors to make conveyance on receiving the balance due on the contract of sale made by their testator, would bind all parties claiming through the latter. It is further insisted that improper evidence was admitted, and it is claimed that the judgment must be reversed by reason of such error. The plaintiff was allowed to testify against such objection to what he heard the deceased testator say to a third party in his presence. He testified that he was present at an interview between testator and Mr. Tefft, from whom the latter made the purchase of the farm, and heard the testator tell Mr. Tefft that he was going to buy the place for him, the plaintiff ; that all he wanted was the interest on his money as long as he lived, and that the place was to belong to the plaintiff on his, the testator's, death. This evidence was objected to as inadmissible under section 399 of the Code, as being a personal transaction or communication between the witness and the deceased. But it was not such. It was a communication of statements made by the deceased to a third party in the witness' presence. He could testify to such statement. It was so held in *Cary* agt. *White* (59 *N. Y.* 336). And this too, even, although the witness should participate in the conversation, JOHNSON, J., says : " It must, I think, be regarded as settled under the present provision of the Code,

that the three hundred and ninety-ninth section does not preclude a party from testifying to the statements of a person deceased, made to a third person in the hearing of the witness."

The learned judge cites *Lobdell* agt. *Lobdell* (36 *N. Y.*, 33, 34), and *Simmonds* agt. *Sisson-* (26 *N. Y.*, 277), in support of his remark. The prohibition contained in section 399 did not reach and cover the evidence objected to; the testimony given by other witnesses was also objected to as prohibited by section 399, but very manifestly there were no grounds for objection.

They were not. parties claiming through or under the deceased in a sense which could exclude the testimony given by them.

But there is another answer to the objection urged against the evidence above alluded to. Strike out all the evidence to which this objection can with any reason of fairness apply, and sufficient will still remain to afford abundant support to the findings of the referee.

In equity actions the court will look to the entire case, and see whether substantial justice has been done, and when that appears it will affirm the judgment, notwithstanding the admission of testimony which in ordinary actions at law might have necessitated a new trial (*Church* agt. *Kidd*, 5 *N. Y. Sup. Ct. R.*, 454; *Platt* agt. *Platt*, 2 *id.*, 454; *Clapp* agt. *Fulerton*, 34 *N. Y.*, 190). In this last case it is laid down by PORTER, J., that on a rehearing in equity the admission of improper evidence on the original hearing, furnishes no ground for reversing the final decision, if the facts established by legal testimony are plainly sufficient to uphold it. So in *Schenck* agt. *Dart* (22 *N. Y.*, *on page* 424), COMSTOCK, J., in remarking.on this class of cases, says : " That it is the duty of the supreme court to pronounce such a judgment as the competent evidence would justify."

There exists in this case no ground for a reversal of the judgment, because of the admission of improper evidence. The granting of costs to the plaintiff was, in the sound dis-

cretion of the referee, to be exercised, as it manifestly was here, in accordance with settled rules ( *Van Riper* agt. *Poppenhousen*, 43 *N. Y.*, 68 ; *Barker* agt. *White*, 5 *Abbott N. S.*, 124). Whether or not the suit could be sustained, as an action to redeem on the hypothesis that the deed was in the nature of a mortgage to secure the payment of the purchase-money, need not be here discussed.

We are of the opinion that substantial justice is answered by the judgment entered, and that it should be affirmed with costs.

So ordered.

BOARDMAN and LEARNED, JJ., concurred.